IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SANFORD DAVIS,

    Plaintiff,

v.

PENNSYLVANIA DEPARTMENT
OF CORRECTIONS, et al.,

    Defendants.

3:12-CV-02161
(JUDGE MARIANI)

FILED
SCRANTON
DEC 2 3 2013

## OPINION

The above-captioned matter arises before the Court upon consideration of Magistrate Judge Carlson's Report and Recommendation of October 18, 2013 (Doc. 65), which addressed Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 42).

The Amended Complaint was filed by a *pro se* prisoner, Sanford Davis. It alleges medical malpractice and Eighth Amendment violations against medical staff at the prison at which Davis was confined, SCI-Camp Hill. (*See* Final Am. Compl., Doc. 27, at 2, 8-9.) The allegations center around two possibly interrelated incidents. First, Plaintiff alleges that he suffers from chronic myelogenous leukemia (CML). (*Id.* at 4.) Nonetheless, he complains that the prison medical staff neglected to provide him with adequate care and treatment, including failing to bring him to appointments for a bone marrow biopsy and failing to

provide him with a chemotherapy drug, Gleevec, for several months after it was prescribed.[1] (*Id.* at 4-5.) Plaintiff believes that these omissions caused his condition to worsen. (*Id.* at 7-8.) Second, Plaintiff alleges that on August 4, 2012, he fell from the top bunk to the floor of his cell. (*Id.* at 5.) This caused "a long laceration on his right shin." (*Id.*) He alleges that he received inadequate treatment, which caused the wound to become swollen, discolored, and infected from "his inner thigh to his foot." (*Id.* at 6.) The infection ultimately necessitated surgery and required Plaintiff to spend approximately a week in an off-site hospital. (*Id.* at 6-7.)

Based on these facts, Magistrate Judge Carlson recommended granting in part and denying in part Defendants' Motion to Dismiss. The Court shall discuss each recommendation separately below.

I. **Medical Malpractice**

First, Judge Carlson recommended granting the Motion as it pertains to Plaintiff's claims for medical malpractice, and dismissing the medical malpractice claim without prejudice. (Doc. 65 at 14.) This is because Plaintiff failed to comply with Pennsylvania Rule of Civil Procedure 1042.3, which requires, in relevant part, that

> (a) in any action based upon an allegation that a licensed professional deviated from an acceptable professional standard . . . the plaintiff . . .

---

[1] The timeline of events is somewhat unclear. Plaintiff met with Dr. Michael Evans of the Penn State Milton Hershey Center Cancer Clinic in May 2012. (*Id.* at 3.) Later he states that "Dr. Evans hadwrote [*sic*] a consult asking [prison medical staff] . . . that they put Davis on a target drug, namely a chemotherapy drug, Gleevec." (*Id.* at 5.) He was finally given Gleevec in mid-August 2012. (*Id.* at 7.) Because there appear to be no visits with Dr. Evans between May and August, it appears that Dr. Evans wrote the original prescription in May

2

> shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either:
> (1) An appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or . . . .
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

PA. R. CIV. P. 1042.3(a).

No party has objected to this portion of the R&R.[2] Therefore, the Court reviews it for clear error or manifest justice. In doing so, the Court concludes that the Magistrate Judge committed no clear error or manifest injustice in recommending dismissal of this claim without prejudice. Rather, his analysis is fully consistent with the established case law. The Court will accordingly adopt his recommendation to dismiss the medical malpractice portion of the Complaint without prejudice.

## II. Eighth Amendment

Second, Magistrate Judge Carlson recommended denying Defendants' Motion to Dismiss as it pertains to Plaintiff's Eighth Amendment claim. Defendants did object to this portion of the R&R, (see Objections, Doc. 70), so the Court will review it under *de novo* review.

---

[2] Though Plaintiff submitted a document that shows up in the CM/ECF docket under the title "Objection to the Report and Recommendation," (see Doc. 75), the substance of the document is actually a response to Defendants' Objections. When one opens the document itself, one finds the title "Brief in Support of Plaintiffs' Motion for Relief." There is no discussion therein of a Rule 1042.3 certificate.

3

However, the Court ultimately agrees with the Magistrate Judge that Plaintiff alleged sufficient facts showing deliberate indifference to his serious medical needs under the Eighth Amendment to survive a Motion to Dismiss. "In order to state a cognizable claim [under the Eighth Amendment for medical mistreatment], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976). Moreover, Supreme Court precedent holds that

> a prison official violates the Eight Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious;" a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety . . . .

*Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994) (internal citations omitted). As Magistrate Judge Carlson correctly noted,

> [s]uch indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

(Report and Recommendation, Doc. 65, at 18.)

Here, Plaintiff has pleaded the following facts with regard to his leukemia condition:

4

1. Defendants Dr. Peter Binnion, Dr. Theodore Vorstad, and Dr. Gandy "each . . . at one point or another had the op[po]rtunity to put Davis on the p[re]scribed medication [for CML], especially Dr. Binnion who initiated the consult with Dr. Evans," an outside specialist in hematology. (Compl. at 10.)

2. In May, June, and July of 2012, Davis put in a series of sick call requests, which were not fulfilled by medical staff. (*Id.* at 4-5.)

3. Instead, medical staff only "put him on a high calor[ie] diet" and provided him with vitamins, neither of which are adequate treatments for leukemia. (*Id.*)

4. Medical staff neglected to bring Davis to a scheduled bone marrow biopsy, which was recommended by Dr. Evans. (*Id.* at 5.)

5. Medical staff neglected from May until August to fill Davis's prescription for the drug Gleevec, which was prescribed by Dr. Evans. (*Id.*)

6. When the Gleevec prescription was finally filled, Dr. Evans "told [Davis] that his body was accepting the Gleevec well," indicating that, if Davis had access to it earlier, he could have avoided certain pain and suffering. (*Id.* at 7.)

7. Dr. Evans recommended a second biopsy four weeks after he met with Davis in August. But after "Davis realized that the four weeks had passed" and asked a prison nurse "about the appointment [he] was told that [the appointment] was never made." (*Id.* at 7.)

He also pleaded the following facts with regard to the injuries sustained from falling from his bunk:

1. After Plaintiff fell, Dr. Voorstad put an inadequate number of stiches in Plaintiff's leg. (*Id.* at 5-6.)

2. Rather than sending Davis to the hospital, Dr. Voorstad only requested that he be provided with ice for his injury. Dr. Voorstad kept Davis in the prison infirmary for two days and then discharged him back to his block when "Davis should have gone to an emergency room." (*Id.* at 6.)

3. During Davis's time in the infirmary, Defendant Nurse Tiffany Jarmuzik did not provide Davis with the ice that Dr. Voorstad directed her to provide. (*Id.*)

4. Upon discharge, Defendant Nurse Peter Theobold did not provide Davis with "any crutches or even a cane to assist him in moving around the prison" after he was discharged from the infirmary, "[f]urther injuring his leg." (*Id.*)

5. On August 8, medical staff ignored Davis's protestations "that he was in allot [*sic*] of pain." Despite the fact that a nurse "noticed that his leg was sever[e]ly swollen . . . Dr. Gandy barely glanced at his leg and she sent him back to his block". (*Id.*)

6. The next day, Davis was sent to a hospital, where the doctors "found that Davis' leg was sever[e]ly swollen, that it was infected and that there was a purple discoloration in his right foot. They also found blood clots and dead tissue in his leg." They then

had to operate on his leg to remove the infection, dead tissue, and blood clots. (*Id.* at 6-7.)

7. Davis ultimately stayed in the hospital from August 9 to August 16. (*Id.*)

8. Upon discharge, Davis "complained about the swelling in his leg, that he was told would have gone down by then," but "Dr. Gandy responded by saying, 'if it's not an emergency, I don't want to hear it.'" (*Id.* at 7-8.)

Magistrate Judge Carlson found that these facts, accepted as true for purposes of a Motion to Dismiss, were sufficient to allege a claim for deliberate indifference under the Eighth Amendment. (Doc. 65 at 21-22; *see also id.* at 8-10 (explaining standard of review of a Motion to Dismiss).) Defendants, however, object that "the essence of the prisoner's complaint is dissatisfaction with the treatment he received from defendant doctors," which cannot sustain a claim under the Eighth Amendment. (Brief in Supp. of Defs.' Objections, Doc. 71, at 6, 8.)

The Court cannot agree. It is certainly arguable that any individual allegation, taken in isolation, may amount only to disagreement with a doctor's professional decisions. But when viewed as part of a bigger picture, the analysis changes. Thus, while Plaintiff's complaints about not receiving crutches from Nurse Theobold, or about having his complaints of swelling dismissively handled by Dr. Gandy, for instance, would not be enough to state a claim for deliberate indifference, the Complaint places them within a broader pattern of indifference to Plaintiff's needs—a pattern of indifference which

culminated in extended loss of treatment for a deadly disease, as well as to an infection serious enough to require an operation and extended hospitalization. From the facts as stated in the Complaint, it is reasonable to infer that all of the named Defendants were aware of the risks to Plaintiff's health based on their repeated alleged failures to provide adequate medical care, and that they disregarded those risks. Plaintiff's Complaint therefore states a claim for deliberate indifference under the relevant Supreme Court precedent and shall proceed forward. *Cf. also Durmer*, 991 F.2d at 66-68 (holding that a prison's denial of opportunities for physical therapy, which caused prisoner's medical condition to worsen, may constitute deliberate indifference under the Eighth Amendment).

### III. Injunctive Relief

Finally, the Court agrees with Magistrate Judge Carlson that any injunctive relief that Plaintiff seeks has been rendered moot by his transfer from SCI-Camp Hill to another prison. (*See* Doc. 65 at 28; *see also* Notice of Change of Address, Doc. 43, at 1 (most recent change of address).) It is unclear whether the relevant passage actually requests injunctive relief as that term is understood in the legal community, or whether it simply seeks money damages that Plaintiff incorrectly calls an "injunction." (*See* Compl. at 11 (prayer for a "preliminary and perm[a]nent injunction ordering the defendants to pay for Davis' blood stem cell transplant, which is the only defin[i]tive cure for CML, or any treatment Davis may have to go through.")

To the extent that the prayer for relief seeks monetary damages, it is permissible and may proceed forward. On the other hand, if it requests an actual injunction, then it is moot for the reasons set forth in the Report and Recommendation. (*See* Doc. 65 at 28-30.)

IV. **Conclusion**

Based on the foregoing considerations, the Report and Recommendation (Doc. 65) is **ADOPTED** and the Defendants' Motion to Dismiss (Doc. 42) is **GRANTED IN PART AND DENIED IN PART**. A separate Order follows.

Robert D. Mariani
United States District Judge